## MILTON O. HIGGINS

*v.*

## BENJAMIN F. CROSBY.

1. CONVEYANCE *by feme covert in another State.* A deed executed by husband and wife, in another State, for the land of the wife, after the 10th of September, 1845, and prior to the 22d of February, 1847, would not pass the estate of the wife in the land, as during that period we had no statute which authorized a *feme covert,* residing out of this State, to convey her property.

2. SAME—*what estate would pass.* The only estate which would pass by such a deed, to the grantee, would be the estate by the curtesy held in the land by the husband.

3. LIMITATION—*against what character of estate the statute will run.* The act of 1839, which provides that possession of land and payment of taxes for seven years, under the proper circumstances, will bar a recovery, is a limitation law; and the statute may run and the bar become complete against all persons having a present right of possession, whether it be the holder of an estate in fee, for life or for years.

4. But the statute cannot run against a reversioner or remainderman during the existence of the prior estate, because during that time he has no right of entry.

5. So where husband and wife executed a deed for land of the wife, under such circumstances that the fee in the wife did not pass to the grantee, but only the estate by the curtesy held by the husband, it was *held,* that while the statute would run against the estate held by the grantee under his deed, which was an estate for the life of his grantor, the husband, it could not run against the estate in fee remaining in the wife, during the existence of such life estate. No right of entry would accrue to the wife until the life estate ceased to exist, and the statute could not begin to run against her until her right of entry did accrue. See also, *Shortall* v. *Hinckley,* 31 Ill. 219.

6. SAME—*who should pay taxes.* It is the duty of a person holding a life estate in lands to pay the taxes thereon during the existence of his estate, and he can acquire no rights under the limitation law by discharging that duty.

APPEAL from the Superior Court of Chicago; the Hon. JOSEPH E. GARY, Judge, presiding.

The opinion of the court contains a statement of the case.

Messrs. HURD, BOOTH & KRAMER, for the appellant

Messrs. BORDEN & SPAFFORD, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was an action of ejectment, brought by plaintiff in error, in the Superior Court of Chicago, against defendant in error, for the recovery of a lot in the city. The parties claim title from a common source. It appears that Ann Wright, on the 22d of December, 1863, conveyed the premises in controversy to plaintiff in error. It likewise appears that she, together with her husband, William Wright, executed a deed of conveyance of the land to Elizabeth Rogers, on the 10th day of February, 1847. Mrs. Rogers, on the 6th day of December, 1855, conveyed the premises to defendant in error. Soon after, Mrs. Rogers purchased, and she went into the actual possession of the lot, and so held it until her sale to defendant in error, and that he took actual possession, and continued in such possession from his purchase until this suit was brought; that he and his grantor paid all taxes legally assessed on the premises during the time they were severally in possession. They thus had actual possession and payment of taxes under color of title concurring for nearly eighteen years. It also appeared that, when the land was conveyed to Mrs. Wright, and at the time she and her husband conveyed the land to Mrs. Rogers, she was a married woman; that he died about three years and a half before this suit was brought; that, of the marriage of Wright and his wife, there was issue, born alive, capable of inheriting from Mrs. Wright.

The deed from Wright and wife to Mrs. Rogers having been executed out of this State, after the 10th day of September, 1845, and before the 22d day of February, 1847, it was without legal authority.  During that period we had no statute which authorized a *feme covert*, residing beyond the limits of the State, to convey her property, and this deed consequently did not pass the fee.  It follows that, under the law as it then existed, Mrs. Rogers only acquired the life estate held by Wright by the curtesy, and only became a tenant for the life of Wright, Mrs. Wright holding the reversion in fee.  This, then, presents the question whether the statute can run against a reversioner so as to toll the entry.

There is no dispute that possession and payment of taxes, under claim and color of title for seven successive years, will bar a recovery in all cases where there is a present right of possession during the period for which the statute is required to run and its requirements are performed.  The act of 1839 has been repeatedly held by this court to be a limitation law, and it can only be sustained upon that ground.  And it is believed to be universally true that the bar of the statute can never be invoked, unless the party against whom it is sought to be used has had the opportunity of asserting his right during the statutory period.  If the right is of such a character that a party is not entitled to make an entry, the statute can never run.  It can only begin after the right to enter has accrued.  Where the title sought to be defeated by the bar is a reversion or a remainder, the holders of such titles have no right of entry, and, having none, they are guilty of no *laches* in failing to make an entry, or in asserting the right.  Such titles are not present and existing rights of possession, but only a present interest, with a future right of possession.  It would be unprecedented to hold that a right of entry was barred where such a right had never accrued.  A party cannot be prejudiced by the non-assertion of a right that does not exist.

It is certainly true, however, that the statute may run, and the bar become complete, against an estate for life, or for a term of years, as in such cases the right of entry is a present

existing right. But in such cases when the particular estate is spent, the bar falls with that estate, and the right of entry then accrues to the remainderman or reversioner, and then, and not till then, the statute begins to run against him. And he must have the same period within which to assert his title, as was had by the owner of the particular estate. In this case the bar was complete against Wright in his life-time, but until his death it did not commence to run against his wife who held the reversion. During the life of her husband she could not have maintained, at any time after the conveyance to Mrs. Rogers, any action for the recovery of the premises, and she would have been a trespasser had she made an entry, and could have been ejected from the premises.

It is however urged, that Mrs. Wright had the power at any time during the coverture to pay the taxes, and to thus stop the running of the statute; that, had she done so once in seven years, she could have prevented the bar of the statute. It is a sufficient answer to this position to say that it was the legal duty of the tenant for life to pay the taxes, and by discharging that duty he could acquire no rights against plaintiffs in error. Had the duty devolved on her then it would have more the appearance of plausibility. Had the owner of the life estate neglected the duty, she, being a *feme covert*, would have had the right when she became sole to redeem the land from any sale for taxes which might have resulted from the neglect. The facts of this case do not present a bar to a recovery by plaintiff in error, and the judgment of the court below must be reversed and the cause remanded for a new trial.

*Judgment reversed.*